### GUTH v. TEXAS CO.
### No. 9313.

Circuit Court of Appeals, Seventh Circuit.

Oct. 11, 1947.

Writ of Certiorari Denied Dec. 22, 1947.

See 68 S.Ct. 268.

Albert H. Fry, of Chicago, Ill., for appellant.

Henry I. Green and Enos L. Phillips, both of Urbana, Ill., Harold A. Smith, of Chicago, Ill., and Walter E. Will, of Tulsa, Okl. for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is the third appeal of this case. It was here twice before on the pleadings, 7 Cir., 145 F.2d 820; 7 Cir., 155 F.2d 563. When the case was last before us, we held that on the third amended complaint the plaintiff had alleged facts sufficient to entitle him to relief for gas produced and in the defendant's possession for which the defendant had not paid the plaintiff. At the trial on the third amended complaint, the court, without a jury, held that the plaintiff had not proved his complaint and gave judgment for the defendant. From this judgment the plaintiff has appealed.

The plaintiff is the owner of one thirty-second part of the royalty which the defendant had agreed to pay for oil and gas to be taken from certain lands, pursuant to leases thereon. The oil fields in question are located in southern Illinois where competitors were drilling and operating the adjacent leaseholds. These wells produced oil and gas from a reservoir in which the gas was mixed and intermingled with the oil and was the propelling agency for the production of oil from the wells. It was impossible to produce oil from the wells in the reservoir without bringing up at the same time quantities of gas known as "casing-head gas." Because of the drilling of wells in close proximity by the com-

petitors, it became necessary for the defendant to drill certain of its wells to offset the drilling on the adjacent land and to prevent the wells on the adjacent land from draining all the oil in the pool, including that under the leases in which the plaintiff was interested. It is not claimed that these wells, drilled and operated by the defendant upon the leases in which the plaintiff was interested, were drilled or operated negligently or not in the most approved manner.

Until producing wells are drilled and the field surveyed as to the quantity and quality of the gas and the size of the reservoir, it is impossible to determine whether it will be profitable to install a gasoline extraction plant to remove from the wet casing-head gas certain heavy hydrocarbons which must be removed before the gas is usable and marketable. In the instant case, the defendant, as soon as it was possible, installed such gasoline extraction plant at the fields in question.

The plaintiff admits that he has been paid for all of the oil taken from the land. He also admits that he has been paid for all of the gas "produced from any oil well and used off the premises or in the manufacture of gasoline, or any other product" as provided by the leases, which included gas produced at the gasoline extraction plant.

Before this gasoline extraction plant could be erected and put into operation, the so-called wet casing-head gas was coming from the oil wells. If closed up so that the gas could not escape, no oil could be taken from the ground. Consequently, the adjacent wells would drain the pool, and the oil, which was of more value, would be lost. The alternative was to allow the gas to come out and with it bring the valuable oil, which would be captured, and permit the gas to escape into the air, or, as a safety measure to be flared, as required by the Illinois law,[1] because there were no facilities for holding such casing-head gas and none could be provided until the gasoline extraction plant could be erected. It is for this wet casing-head gas which was allowed to escape and was flared that the plaintiff seeks compensation on the ground that this was "gas produced and in possession" of the defendant, within the meaning of our former opinion. The plaintiff contends that the defendant had possession of the casing-head gas in the pipes to the mouth of the well, and it must account for such gas as it let escape.

We cannot agree that this was such possession as would make the defendant liable. One cannot be said to possess something which he cannot by force of circumstances contain or control. The defendant was faced with a problem. It could leave the oil and gas in the wild fugacious state under the land and thereby lose both to its competitors operating on adjacent land. Or it could let the gas escape and flare it, as required by the Illinois law, capture the far more valuable oil, and build a gasoline extraction plant as soon as possible to save the gas. It did the latter.

By the plaintiff's admission, the defendant discharged its obligations under the leases and since, as we now hold, the defendant did not have in its possession the gas it was compelled to let escape, it owed the plaintiff nothing, and the District Court properly dismissed the complaint.

Since the defendant did not owe the plaintiff for the gas it never possessed, the evidence offered by the plaintiff as to the amount of this gas was properly excluded as wholly immaterial.

We find no error in the record, and the judgment is affirmed.

---

[1] "Rule D-14. Surplus gas disposal. All gas produced from operations of oil wells that is not utilized shall be burned at a safe distance from any well, storage tank, building, or inflammable materials, as may be determined by the Department." Rules and Regulations, Illinois Department of Mines and Minerals, promulgated pursuant to Chap. 104, Sec. 67, Ill.Rev.Stat.1945.